**Thomas C. Sand**, OSB No. 773322
tom.sand@millernash.com
**Iván Resendiz Gutierrez**, OSB No. 154617
ivan.resendiz@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155

Attorneys for Plaintiff Andrea Olson

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ANDREA OLSON**, an individual, | Case No. 3:15-cv-02216-HZ |
| Plaintiff, | AMENDED COMPLAINT |
| v. | (Violation of American with Disabilities Act, 42 USC §§ 12101 et seq.; Violation of Family Medical Leave Act, 29 USC §§ 2601 et seq.) |
| **MBO PARTNERS, INC.**, a Virginia Corporation; **UNITED STATES OF AMERICA**, by and through the Department of Energy and Bonneville Power Administration; and **JAMES RICHARD PERRY**, Secretary of the Department of Energy, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Page 1 -   Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

4841-8203-3213.1

## SUMMARY STATEMENT

1.

Plaintiff Andrea Olson ("Plaintiff") seeks monetary relief, attorneys' fees, and costs against MBO Partners, Inc. ("MBO"), and Bonneville Power Administration ("BPA") (collectively, "Defendants") to redress violations of her rights under the Americans with Disabilities Act and Family Medical Leave Act, alleging as follows:

## JURISDICTION AND VENUE

2.

Jurisdiction lies under 28 USC § 1331. This matter involves a civil action arising under the laws of the United States and pertaining to federal questions.

3.

Venue is proper under 28 USC § 1391. The claims alleged in this complaint are based on events and omissions which have substantially occurred in this District.

## PARTIES

Plaintiff Andrea Olson was at all material times, and is now, a citizen of the United States and a resident and citizen of the State of Oregon.

4.

Defendant MBO is a Virginia corporation headquartered in Herndon, Virginia. MBO provides management services for independent professionals and the clients that engage them. At the time of the events giving rise to this complaint, MBO was doing business in Oregon, providing several services, including contracting support and processing; time and project tracking, approval, and assignment; billing and collection support; expense tracking; payroll and payroll tax processing; and access to employee benefit programs and insurance.

4841-8203-3213.1

5.

Defendant BPA is a federal agency headquartered in Portland, Oregon.  BPA is part of the United States Department of Energy, an agency of Defendant United States.

6.

James Richard Perry is the Secretary of the United States Department of Energy.

## ADMINISTRATIVE PREREQUISITES

7.

On July 15, 2014, Plaintiff filed a complaint against MBO with the Oregon Bureau of Labor and Industries ("BOLI"), alleging, among other things, discrimination against her on the basis of disability and reprisal for asserting federally protected rights.  The same day, Plaintiff cross-filed with the Equal Employment Opportunity Commission (the "EEOC").

8.

BOLI issued a complaint dismissal memorandum on June 11, 2015.  The EEOC issued a right-to-sue letter on August 27, 2015.

9.

Plaintiff filed her original complaint on November 24, 2015, and therefore she complied with any administrative prerequisites to file suit.

## FACTS COMMON TO ALL CLAIMS

A.    **Plaintiff's begins working with BPA as a contractor.**

10.

In January 2010, plaintiff executed a contract with BPA on behalf of Pacific Disability Management LLC ("PDM"), an Oregon domestic limited liability company, of which Plaintiff is the sole manager and member.

11.

Plaintiff worked as contractor for BPA, providing reasonable accommodation services to BPA's employees.  Plaintiff's duties, included, among other things, providing

4841-8203-3213.1

"reasonable accommodation consultation and guidance under the federal Rehabilitation Act and the American with Disabilities Act (the "ADA") to client management and reasonable accommodation services to client employees on approval by client management. In addition, Plaintiff maintained and retained "case management files per legal rules and regulations as well as client policy." While working for BPA, Plaintiff was recognized for going "a good job of disability management."

12.

The initial contract between PDM and BPA was a one-year contract, renewable annually for up to five years. Over the next several years, PDM and BPA extended or amended the contract several times. Finally, in January 2012, Plaintiff signed an additional contract extension and modification to extend reasonable accommodation services and funds through January 2012. This was the last contract extension that Plaintiff signed with BPA.

**B.**    **BPA becomes Plaintiff's "joint employer" along with MBO.**

13.

In December 2011, MBO advised BPA that Plaintiff was at risk of reclassification by the United States to avoid the Internal Revenue Service determining that she was an employee. To avoid the classification, BPA instructed that she could continue working for BPA as its Reasonable Accommodation Coordinator, but only if she became a W-2 employee of MBO—a placement agency that supplies temporary workers, referred to as "individual professionals," to numerous clients, including BPA and other federal agencies. To become a W-2 employee of MBO, Plaintiff had to execute an employment contract with MBO, which would function as a placement agency by supplying Plaintiff's services to BPA.

14.

At BPA's insistence, on January 17, 2012, Plaintiff signed a General Service Agreement (the "Agreement") with MBO.

15.

From January 2012, MBO "supplied" Plaintiff as a worker to BPA to fill BPA's position of "Technical-Professional Subject Matter Expert" ("SME"). In that role, Plaintiff provided professional disability services to BPA through the direction of BPA's Talent Sustainment Manager, Sharon Hale-Mockley. In this role, Plaintiff maintained the title of "Reasonable Accommodation Coordinator" and used a BPA e-mail address, abolson@bpa.gov.

16.

As part of the Agreement, BPA paid MBO for work performed by Plaintiff and MBO, in turn, paid Plaintiff after extracting a "business management fee"—based on a percentage of the contract rate that Plaintiff was being paid through BPA—for its services. MBO provided employee benefits to Plaintiff, including group health, life, and disability benefits, and could direct contributions to the "MBO Association 401(k) plan."

17.

MBO controlled Plaintiff's conditions of payment, directed how Plaintiff was to submit her hours worked, and dictated how and when Plaintiff would be paid. To receive payment, Plaintiff submitted her hours worked and travel time to MBO through a billing and work order system used by Defendants called Fieldglass. At Defendants' direction, Plaintiff continued to submit detailed invoices to BPA, in addition to logging her time in Fieldglass.

18.

Unbeknownst to Plaintiff, BPA sent MBO recurring work orders for Plaintiff's services. Years later, Plaintiff discovered that she was on temporary assignment to BPA, MBO's client.

19.

Plaintiff worked as the Reasonable Accommodation Coordinator solely for BPA through MBO. Plaintiff was not asked to perform work for any other entities, nor did she solicit

outside work, because she was working full time meeting the work requests and reporting requirements of BPA and MBO.

**C.**   **Plaintiff's disabilities and Defendants' knowledge of those disabilities.**

20.

Plaintiff has an obvious physical disability that was known to BPA since it first hired her in 2010.  Plaintiff suffers from hearing loss of greater than 70 decibels over both ears, and must wear hearing aids and utilize amplification to talk on the telephone.

21.

Plaintiff also has a non-obvious disability, anxiety.  This disability causes cognitive impairment, including impaired concentration, fatigue, episodic difficulties with emotional regulation, and difficulty in communicating with others.  This disability is further exacerbated by Plaintiff's hearing loss.

22.

In April 2013, Plaintiff had her first onset of anxiety while working for BPA through MBO.

23.

In November 2013, Plaintiff e-mailed MBO Business Manager Megan Craft, informing Ms. Craft that Plaintiff was "having difficulty performing" her job duties as Reasonable Accommodation Coordinator because, among other things, the Medical Program Manager ("MPM") had been directly interfering with her ability to do her job.  Plaintiff also informed Ms. Craft that she feared retaliation.

**D.**   **Plaintiff lodges ethics complaints and invokes her FMLA rights, only to have Defendants violate those rights.**

24.

In December 2013, Plaintiff lodged an ethics complaint with BPA's Ethics Hotline against the MPM.  Plaintiff complained to the hotline that the MPM was creating a

4841-8203-3213.1

hostile work environment by impeding Plaintiff's ability to effectively assist employees who had legally cognizable disabilities requiring accommodation. After this complaint, the MPM continued to obstruct Plaintiff's work performance.

25.

Plaintiff's direct supervisor, Ms. Hale-Mockley, was notified of Plaintiff's ethics complaint. Thereafter, Ms. Hale-Mockley began to direct increasing criticism at Plaintiff's professional recommendations and to challenge Plaintiff's expertise.

26.

In January 2014, for example, Ms. Hale-Mockley questioned Plaintiff's interest in working for BPA, repeatedly asking if she still wanted to work at BPA. Ms. Hale-Mockley did so despite knowing that Plaintiff's only occupation and source of income was as the Reasonable Accommodations Coordinator for BPA, through MBO. This repeated interrogation further exacerbated Plaintiff's anxiety.

27.

On February 3, 2014, Ms. Craft informed Plaintiff that MBO had received an extension for Plaintiff's work order with BPA and that Plaintiff's new end date was January 30, 2015.

28.

In February 2014, Plaintiff contacted Ms. Craft by telephone to address the numerous challenges of working with BPA on providing reasonable accommodations to BPA employees. During that telephone call, Plaintiff identified the individuals at BPA whose treatment of her was exacerbating her anxiety.

29.

The MBO Partners Associate Handbook provides that MBO "will work reasonably with Associates to assist them in addressing *any disability related issues*" "by making requests for reasonable accommodations to their Business Manager." The handbook further

4841-8203-3213.1

provides that, "[i]f the associate is working at a client site, [MBO] will contact the client and discuss with them their ability to provide a reasonable accommodation."  Contrary its own handbook, MBO failed to take any steps after the telephone conversation to discuss reasonable accommodations with BPA or Plaintiff.

30.

In February 2014, Plaintiff verbally notified BPA management that she suffered from anxiety.

31.

On March 3, 2014, Plaintiff e-mailed Ms. Craft, formally requesting reasonable accommodation and providing several proposed accommodations to be facilitated by BPA Ombudsman Jackie Shelpman.  The proposed accommodations were increased telework time, more structured communications with Ms. Hale-Mockley, and the ability to communicate directly with the Department of Energy's reasonable accommodations coordinator.  In addition, Plaintiff informed Ms. Craft that she was "working with her medical provider on [] FMLA documentation."

32.

On March 4, 2014, Ms. Craft responded, informing Plaintiff that MBO Human Resources Director Carol Baxter ("Ms. Baxter") had been informed of Plaintiff's reasonable accommodation requests.  Ms. Craft added that she would let Plaintiff know once she heard back "regarding Jackie Shelpman."

33.

On March 25, 2014, Plaintiff e-mailed Ms. Baxter requesting medical leave.  In her e-mail, Plaintiff attached a diagnosis and a standard U.S. Department of Labor FMLA request form, "Certification of Health Care Provider for Employee's Serious Health Condition," with completed Employee and Health Provider sections, Sections II and III.  On the FMLA form, Plaintiff's clinical psychologist, Janice I. Volkin, provided the requisite medical certification,

Page 8 -    Amended Complaint

stating Plaintiff's conditions and the amount of leave Plaintiff would need.  Dr. Volkin recommended that Plaintiff was initially to be on leave through March 28, 2014, needing additional periods of leave during episodes of heightened symptoms.

34.

The FMLA form provides that an employer "complete Section I before giving this form to" the employee.  Plaintiff informed Ms. Baxter that she received a form with Section I uncompleted.  Plaintiff asked Ms. Baxter to send her a copy of the form with any updates.

35.

On March 25, 2014, Plaintiff e-mailed Ms. Baxter a letter from Dr. Volkin regarding Plaintiff's FMLA leave request.  In the letter, Dr. Volkin explained why Plaintiff was out of the office from March 17, 2014, through March 21, 2014.  In addition, the letter stated that Plaintiff would be out of the office from March 24, 2014, through March 28, 2014, and that "these periods of time should be considered part of the requested FMLA leave time."

36.

On or about March 25, 2014, Ms. Craft e-mailed Plaintiff, notifying Plaintiff that Ms. Baxter had received Plaintiff's FMLA documentation.  Ms. Craft did not mention that any further action on Plaintiff's part was needed with regard to the FMLA request.

37.

Neither MBO nor BPA, however, responded to Plaintiff's FMLA request with any notice to Plaintiff about her specific rights and responsibilities, or entitlement to leave, under FMLA.  Plaintiff was not supplied with the requisite FMLA paperwork and was not notified when her leave began or when it would expire.  This conduct exacerbated Plaintiff's anxiety.

### E.    **BPA terminates Plaintiff's employment.**

38.

The same day Plaintiff invoked her FMLA rights, Scott Hampton, BPA's Manager of Supplemental Labor Management Office, e-mailed Ms. Hale-Mockley, recommending,

despite Plaintiff's "long history" at BPA and "good work," that BPA "releas[e]" Plaintiff and "find a new person to do the job."

39.

The same day, Ms. Hale-Mockley replied to Mr. Hampton's e-mail, stating that she had "been thinking seriously of release as well."

40.

During her leave, Plaintiff kept BPA and MBO apprised of her progress via e-mail. For example, on Friday, March 28, 2014, Plaintiff e-mailed Ms. Baxter regarding Plaintiff's FMLA leave request, informing her that, per Dr. Volkin's instructions, Plaintiff would be out of the office the next week. Plaintiff asked Ms. Baxter whether Plaintiff needed to do anything else other than inform her manager at BPA. In addition, Plaintiff asked Ms. Baxter to explain whether Plaintiff's medical information had been shared, and if so, what information and with whom.

41.

On March 28, 2014, Ms. Craft e-mailed Plaintiff, informing her that Plaintiff did "not need to take in [sic] further action in regards to FMLA. You [sic] medical information has only been received and seen by Carol Baxter."

42.

On April 1, 2014, while on FMLA leave, BPA instructed Plaintiff to work.

43.

On April 3, 2014, Plaintiff e-mailed Ms. Baxter to state that, on the instructions of her medical provider, she would need additional leave through April 18, 2014. Plaintiff also wrote to Ms. Baxter that "If you need any additional information, please let me know."

44.

On April 28, 2014, Ms. Craft e-mailed Plaintiff disclosing that MBO did not view Plaintiff as its employee.

4841-8203-3213.1

45.

On April 10, 2014, Mr. Hampton e-mailed Meghan Defibaugh, an operational account manager for MBO, to report that BPA had decided to terminate Plaintiff. He asked MBO not to inform Plaintiff of this decision, so MBO did not inform Plaintiff of BPA's decision to terminate her. In the e-mail, Mr. Hampton stated, "We all did have the conversation a few weeks ago about [Plaintiff's] request for reasonable accommodation, but those three items were not medically necessary and appeared to be more issues with her role and her BPA manager."

46.

Plaintiff later learned that several BPA and MBO employees had participated in a conference call about Plaintiff's accommodation requests. Among MBO's employees on that call were Ms. Craft, Anne Lupardo, and Kimball Norup. Plaintiff was not present at the conference or any other conversations between BPA and MBO employees about her accommodation requests.

47.

Mr. Hampton's conclusion that Plaintiff's requests were "not medically necessary" was not based on any apparent medical authority. Despite this, no employee of BPA or MBO ever contacted Plaintiff to request additional medical documentation to support her proposed accommodations or to suggest alternate accommodations.

48.

On April 14, 2014, Ms. Hale-Mockley e-mailed another BPA employee appointing that employee as BPA's new reasonable accommodation coordinator, replacing Plaintiff. Plaintiff did not learn that she had been replaced until late April 2014 or early May 2014.

49.

On April 28, 2014, Plaintiff e-mailed Ms. Craft again to ask if Ms. Craft had heard anything from BPA regarding Plaintiff's reasonable accommodation requests. The same day, Ms. Craft e-mailed Plaintiff to confirm that the requests had been forwarded to BPA.

50.

In a separate e-mail, Plaintiff asked Ms. Craft to confirm when MBO had submitted her accommodation requests to BPA and what BPA had responded.

51.

On April 29, 2014, Ms. Craft responded that the request had been submitted in early March, and that Mr. Hampton confirmed the receipt of the request, although no response was given to Plaintiff's request. Ms. Craft stated, "at this time BPA is waiting for you to return to work to discuss your request further" and that Plaintiff would have to take the initiative to get in touch with BPA "for further specifics."

52.

In a separate e-mail, Ms. Craft told Plaintiff that in regards to Plaintiff's FMLA leave request, Plaintiff had "the ability to take off as long as necessary and still come back and work through MBO." According to Ms. Craft, "the decision is up to BPA and not MBO" as to whether any work would "remain held" for Plaintiff. At the time Ms. Craft wrote this, MBO had known for at least two weeks that BPA had decided to terminate Plaintiff.

53.

On April 28, 2014, without notice, Plaintiff's access to BPA's network was cut off, and she was effectively restricted from performing any work for BPA.

54.

On April 29, 2014, Plaintiff spoke to a BPA information technology colleague, Lonell Golden. Mr. Golden expressed concern and asked about Plaintiff's health. He did so because he had received a request to process Plaintiff's termination.

Page 12 -    Amended Complaint

55.

On April 29, 2014, Plaintiff initiated a complaint of unlawful discrimination with the BPA Civil Rights/Equal Employment Opportunity office ("BPA EEO") regarding BPA's actions against her.

56.

On April 30, 2014, Plaintiff received an e-mail from Tamara Wilde, a BPA supplemental labor operations analyst, stating among other things: "your assignment with BPA is being ended effective immediately. Your access to the BPA network and/or property has been revoked. The BPA security badge and any other BPA property . . . in your possession will need to be returned within three business days. For your convenience these items may be surrendered to the guard at the guard station in the lobby of BPA's headquarters in Portland, Oregon."

57.

On May 1, 2014, Mr. Hampton e-mailed Plaintiff claiming that the e-mail from Ms. Wilde's April 30, 2014, e-mail had been sent in error.

58.

On May 7, 2014, Mr. Hampton e-mailed Ms. Baxter, informing her that BPA would not grant Plaintiff network access to enable her to perform any work.

59.

On May 7, 2014, Plaintiff learned that her position was being given to a BPA employee and that Plaintiff needed to train that employee.

60.

On May 19, 2014, Mr. Hampton reiterated to Ms. Baxter and several other MBO employees that BPA had cut off all of Plaintiff's access to the BPA network. MBO employees took no action to restore Plaintiff's access to the BPA network or to assign her any additional work.

4841-8203-3213.1

61.

On May 27, 2014, Ms. Craft e-mailed Plaintiff, finally alerting her that Plaintiff was "working in a contract position for BPA, as an independent consultant," and that Plaintiff's "relationship with MBO is that you are a W2 employee for tax purposes."

62.

After Plaintiff's medical leave period expired, MBO assigned no further work to Plaintiff.

63.

As a direct and proximate result of BPA's and MBO's actions, Plaintiff has suffered damages, including but not limited to: lost wages and employment benefits; anxiety; pain; suffering; and mental and emotional distress; and harm to her employment reputation and prospects.

## FIRST CLAIM FOR RELIEF

(ADA Disability Discrimination / Failure to Accommodate

42 USC § 12112 - against MBO only)

64.

Plaintiff re-alleges and incorporates paragraphs 1 through 63.

65.

The ADA, through 42 USC § 12112, prohibits discrimination against a qualified individual on the basis of disability. Such discrimination includes, among other prohibited acts, failure to make reasonable accommodations for an individual's known physical or mental limitations.

66.

At all material times, MBO was an employer for the purposes of, and subject to the ADA.

4841-8203-3213.1

67.

Plaintiff was a disabled person within the meaning of 29 USC §§ 12102 and 12111 in that, at all material times, Plaintiff suffered from physical or mental impairments that substantially limited one or more of her major life activities; had a record of suffering from physical or mental impairments that substantially limited one or more of her major life activities; or was regarded by MBO and BPA as suffering from physical or mental impairments that substantially limited one of more of her major life activities.

68.

Plaintiff was otherwise qualified to perform the essential functions of her job, with or without accommodation; and therefore, Plaintiff is a "qualified individual" with a "disability" for purposes of 29 USC §§ 12102 and 12111.

69.

Plaintiff requested reasonable accommodations from MBO. In addition, MBO was on notice of Plaintiff's claims that co-workers and/or managers were discriminating against her because of her disabilities.

70.

MBO's conduct violated 42 USC § 12112 in several ways, including, but not limited to, the following: MBO ignored all of Plaintiff's requests; MBO failed to engage in the interactive process; allowed Plaintiff to be subjected to a hostile work environment concerning her disabilities; and/or subjected Plaintiff to a hostile work environment because of her disabilities.

71.

MBO discriminated and retaliated against Plaintiff on the basis of her disabilities. Plaintiff was subject to adverse employment actions by MBO management, including termination of her employment.

4841-8203-3213.1

72.

As a direct and proximate result of MBO's employment actions, Plaintiff has suffered—and continues to suffer—humiliation, anxiety, distress, and impairment of her personal dignity and right to be free from discrimination or interference with her statutory rights. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, loss of past and future wages and benefits, and other expenses.

73.

Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that MBO violated Plaintiff's statutory rights. Plaintiff should be reinstated and awarded past economic damages and all lost benefits in an amount to be determined at trial. If reinstatement is not appropriate, then Plaintiff is entitled to an award for back pay and lost employment benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and should be awarded in an amount to be determined at trial.

74.

Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount to be determined at trial.

75.

To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

76.

MBO should be assessed punitive damages in an amount determined at trial to punish MBO and to deter such conduct in the future.

77.

Pursuant to 42 USC §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees and costs incurred in this action.

78.

Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF

(ADA Disability Retaliation, 42 USC § 12203 - against MBO only)

79.

Plaintiff re-alleges and incorporates paragraphs 1 through 63 above.

80.

The ADA, through 42 USC § 12203, prohibits retaliation against or interference with an individual who invokes employment rights under the ADA, or who files a charge or complaint of disability discrimination.

81.

At all material times, MBO was an employer for the purpose of, and subject to the ADA.

82.

Plaintiff was a disabled person within the meaning of 29 USC §§ 12102 and 12111 in that, at all material times, Plaintiff suffered from physical or mental impairments that substantially limited one or more of her major life activities; had a record of suffering from physical or mental impairments that substantially limited one or more of her major life activities; or was regarded by MBO as suffering from physical or mental impairments that substantially limited one of more of her major life activities.

Page 17 -    Amended Complaint

83.

Plaintiff was otherwise qualified to perform the essential functions of her job, with or without accommodation and is therefore a "qualified individual" with a "disability" for purposes of 29 USC §§ 12102 and 12111.

84.

MBO's actions violated 42 USC § 12203 in several ways, including, but not limited to, the following:  (a) MBO terminated Plaintiff and/or deprived her of additional employment opportunities based in whole or in part on her request for disability accommodations; and (b) MBO denied employment opportunities to Plaintiff based on her filing complaints with the BPA EEO and/or BOLI.

85.

As a direct and proximate result of these actions, Plaintiff has suffered economic damages by way of past and future lost wages and employment benefits in an amount to be determined at trial.

86.

As a further direct and proximate result of MBO's wrongful retaliatory actions, as described in this complaint, Plaintiff has suffered non-economic compensatory damages by reason of emotional distress, anxiety, worry, professional humiliation, embarrassment, loss of self-esteem, self-respect and confidence, and an overwhelming perpetual sense of jeopardy with respect to her employment in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### Count One

### (FMLA Interference, 29 USC § 2615(a)(1) - against MBO and BPA)

87.

Plaintiff re-alleges and incorporates paragraphs 1 through 63 above.

Page 18 -    Amended Complaint

88.

The FMLA, through 29 USC § 2615(a), prohibits an employer from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under the FMLA.

89.

For purposes of FMLA coverage, from January 2012 until Plaintiff's termination, BPA and MBO were Plaintiff's joint employers exercising joint control over Plaintiff's work and working conditions. 29 CFR § 825.106. Regardless of how MBO classified Plaintiff's position, the benefits MBO offered demonstrate an employer-employee relationship between MBO and Plaintiff. And MBO was Plaintiff's employer for purposes of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). MBO benefited from Plaintiff's services by receiving a business management fee and "tax allocation fees."

90.

At all times material to this complaint, MBO was engaged in an industry affecting commerce and, either solely or as a joint employer, had more than 50 employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Accordingly, at all material times, MBO was an "employer" as defined by 29 USC § 2611(4)(A).

91.

At all times material to this complaint, BPA was engaged in an industry affecting commerce and employed more than 50 persons for each working day during each of 20 calendar workweeks in the current or preceding calendar year. Accordingly, at all material times, BPA was an "employer" as defined by 29 USC § 2611(4).

92.

Plaintiff is a Title I employee under the FMLA because she is not a federal civil service employee covered by Title II.

4841-8203-3213.1

93.

Plaintiff is an "employee" for purposes of the FMLA, because Plaintiff worked for BPA, through MBO, for more than 12 months and she worked at least 1250 hours during the 12-month period before the leave commenced. 29 USC § 2611(2)(A); 29 CFR §§ 825.110(b), 825.110(c).

94.

Plaintiff suffers from one or more "serious health conditions," as that term is defined in 29 USC § 2611(11), including but not limited to hearing loss, anxiety, and cognitive impairment. Because Plaintiff suffered from one or more serious health conditions, she was entitled to all rights afforded by the FMLA.

95.

Plaintiff's leave was implemented so Plaintiff could recover from, or seek treatment for her own serious health conditions. 29 CFR § 825.112(a)(4).

96.

Defendants' actions violated 29 USC § 2615(a) in several ways, including but not limited to the following: (a) Defendants failed to provide Plaintiff notice of her leave rights and entitlement, as required by 29 CFR § 825.300(d)-(e), and (b) Defendants denied Plaintiff reinstatement by failing to restore her to employment at the conclusion of leave protected by FMLA, as required by 29 USC § 2614, in retaliation for having invoked her FMLA rights and for requesting and/or taking FMLA leave. Defendants' termination of Plaintiff constituted interference with Plaintiff's exercise of her federally protected right to take leave and receive reinstatement.

97.

Defendants knew or showed reckless disregard for whether their conduct was prohibited by the law; therefore, Defendants' conduct constituted a willful violation of the FMLA.

Page 20 -   Amended Complaint

98.

As a result of Defendants' conduct, Plaintiff has suffered economic damages in an amount to be determined at trial, including front pay damages, due to her termination and her current and future medical expenses as a result of the severe impact on her mental and emotional state. Plaintiff is also entitled to equitable relief as may be appropriate, including employment, reinstatement, and promotion. Plaintiff is further entitled to an additional award of liquidated damages equal to an amount of economic damages under 29 USC § 2617. And Plaintiff is entitled to attorney fees, reasonable expert fees, and costs under 29 USC § 2617.

**Count Two**

(FMLA Retaliation, 29 USC § 2615(b))

99.

Plaintiff re-alleges and incorporates paragraphs 1 through 63 and 89 through 95 above.

100.

FMLA, through 29 USC § 2615(b), prohibits an employer from discharging or discriminating against an employee for filing a charge or participating in a proceeding related to that employee's FMLA rights.

101.

Defendants actions and/or omissions violated 29 USC § 2615(b) in several ways, including, but not limited to, discharging and/or failing to restore Plaintiff to her employment based in whole or in part on Plaintiff filing complaints with the BPA EEO and/or BOLI and the EEOC. Defendants' termination of Plaintiff constituted retaliation and/or discrimination because of Plaintiff's exercise of her rights under FMLA, including participating in inquiries under the FMLA.

4841-8203-3213.1

102.

Defendants knew or showed reckless disregard for whether their conduct was prohibited by the law; therefore, Defendants' conduct constituted a willful violation of the FMLA.

103.

As a result of Defendants' conduct, Plaintiff has suffered economic damages in an amount to be determined at trial, including front pay damages, due to her termination and her current and future medical expenses as a result of the severe impact on her mental and emotional state. Plaintiff is also entitled to equitable relief as may be appropriate, including employment, reinstatement, and promotion. Plaintiff is further entitled to an additional award of liquidated damages equal to an amount of economic damages under 29 USC § 2617. And Plaintiff is entitled to attorney fees, reasonable expert fees, and costs under 29 USC § 2617.

### Count 3

#### (FMLA Discrimination, 29 USC § 2615(a)(2))

104.

Plaintiff re-alleges and incorporates paragraphs 1 through 63 and 89 through 95 above.

105.

FMLA, through 29 USC § 2615(a)(2), bars employers from taking adverse employment action against an employee for opposing any practice made unlawful by the FMLA.

106.

Defendants actions violated 29 USC § 2615(a)(2) in several ways, including, but not limited to discriminating against Plaintiff for opposing one of Defendant's practices prohibited by FMLA.

4841-8203-3213.1

107.

Defendants knew or showed reckless disregard for whether their conduct was prohibited by the law; therefore, Defendants' conduct constituted a willful violation of the FMLA.

108.

As a result of Defendants' conduct, Plaintiff has suffered economic damages in an amount to be determined at trial, including front pay damages, due to her termination and her current and future medical expenses as a result of the severe impact on her mental and emotional state. Plaintiff is further entitled to an additional award of liquidated damages equal to an amount of economic damages under 29 USC § 2617. Plaintiff is also entitled to equitable relief as may be appropriate, including employment, reinstatement, and promotion. And Plaintiff is entitled to attorney fees, reasonable expert fees, and costs under 29 USC § 2617.

109.

Plaintiff acknowledges that the Agreement she made with MBO contains a clause requiring arbitration of disputes. In the event the Court enforces this arbitration clause against Plaintiff, she respectfully requests that the Court enter a stay of proceedings pending arbitration of the claims against MBO, and that the Court retain jurisdiction to enter an order and judgment on the arbitration award.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    Judgment against MBO in an amount to be determined at trial for actual, economic and contract damages, of not less than $450,000;

2.    Judgment against MBO, in the amount to be determined at trial, for noneconomic and other compensatory damages, including pain, suffering, and mental distress, of not less than $300,000;

Page 23 -   Amended Complaint

4841-8203-3213.1

      3.      Judgment against MBO, in an amount to be determined at trial, for punitive damages;

      4.      Pursuant to 29 USC § 2617(1)(a)(A), compensation for monetary loss, including lost wages and employment benefits, including reinstatement to a position of comparable pay, rank, and seniority with fully restored benefits, or future lost wages in lieu of reinstatement; reemployment, or promotion, plus front pay and prejudgment interest;

      5.      Liquidated damages, including pre-judgment interest;

      6.      Prejudgment and postjudgment interest as appropriate and allowed by law;

      7.      On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame;

      8.      Pursuant to 29 USC § 2617(a)(3), 42 USC § 1988(b), 42 USC § 2000e-5(k), and 42 USC §§ 12205, 12117(a), reasonable attorney fees and costs;

      9.      Plaintiff's fees, costs, and disbursements incurred in this action;

      10.     In the event the Court enforces the arbitration clause in the Agreement against Plaintiff, a stay of proceedings pending arbitration; and

      11.     Any other equitable relief this Court deems appropriate.

      DATED this _13_ day of March, 2017.

MILLER NASH GRAHAM & DUNN LLP

Thomas C. Sand, OSB No. 773322
tom.sand@millernash.com
Iván Resendiz-Gutierrez, OSB No. 154617
ivan.resendiz@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155
    Attorneys for Plaintiff Andrea Olson

4841-8203-3213.1

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Amended Complaint on:

> Jenna Leigh Mooney
> jennamooney@dwt.com
> Kalia Walker
> kaliawalker@dwt.com
> Davis Wright Tremaine, LLP
> 1300 SW Fifth Avenue, Suite 2400
> Portland, OR 97201-5630
> Telephone: (503) 241-2300
> Fax: (503) 778-5299
>
> Attorneys for Defendant MBO Partners, Inc.

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.** As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

DATED this 13 day of March, 2017.

_____
Thomas C. Sand, OSB No. 773322
tom.sand@millernash.com
Iván Resendiz-Gutierrez, OSB No. 154617
ivan.resendiz@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155

Attorneys for Plaintiff Andrea Olson

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

4841-8203-3213.1