**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**JAMES E. COX, JR., OSB # 085653**
jim.cox@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone:   (503) 727-1026
Facsimile    (503) 727-1117
Attorneys for Defendants the United States of America and James Richard Perry ("Federal Defendants")

THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ANDREA OLSON**, an individual, | Case No. 3:15-cv-02216-HZ |
| Plaintiff, | **FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **UNITED STATES OF AMERICA**, by and through the Department of Energy and Bonneville Power Administration; and **JAMES RICHARD PERRY**, Secretary of the Department of Energy, | |
| Defendants. | |

Page 1   FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF
            MOTION FOR SUMMARY JUDGMENT

Defendants the United States of America and James Richard Perry ("Federal Defendants"), by Billy J. Williams, United States Attorney for the District of Oregon, and through James E. Cox, Jr., Assistant United States Attorney for the District of Oregon, submit this reply brief in support of Federal Defendants' motion for summary judgment (ECF # 94).

## I.    INTRODUCTION

Plaintiff Andrea Olson's ("Olson's") opposition to Federal Defendants' motion for summary judgment fails to raise a dispute about the key fact in this case: that the Bonneville Power Administration ("BPA") permitted Olson to return to work throughout her extended absence in 2014. Olson points to two emails from April 2014 in support of her argument that BPA terminated her contract at that time, but the emails cannot and do not support the weight that Olson places on them. In fact, BPA repeatedly notified Olson that she was free to return to work in 2014, but she was simply unable to return or chose not to return. For this reason, BPA did not violate any rights Olson may have had under the Family and Medical Leave Act ("FMLA") and summary judgment is appropriate.

Furthermore, summary judgment is also appropriate because Olson was an independent contractor, not a BPA employee, and thus BPA is not subject to liability under the FMLA. Olson's argument to the contrary ignores the critical factor in the employment test – that BPA did not control the manner in which Olson performed her work.

## II.   ARGUMENT

A.  **It Is Undisputed That BPA Permitted Olson To Return to Work Throughout Her Absence – She Simply Was Unable To Return or Chose Not to Return.**

Olson contends that BPA violated the FMLA by terminating her position on April 30, 2014, which was eight months before the scheduled expiration of her contract and two months after she had stopped coming to work.   Olson's contention that BPA terminated her assignment is based on two emails.   These emails do not support Olson's contention and are not sufficient to create a dispute of material fact as to whether BPA terminated her contract.

The first email that Olson points to is an exchange dated April 9-10, 2014, between Scott Hampton, the manager of BPA's Supplemental Labor Management Office ("SLMO"), and employees of MBO, the payroll processing company that BPA used for Olson's contract work.[1]   (ECF 110, Ex. 3.)   In this email exchange, Hampton asks MBO for information regarding the reason for Olson's absence from work.   He also states that "[w]e will be releasing Andrea tomorrow and terminating her assignment.   Please don't let her know at this point because we haven't made the final decision, I'm just making sure are bases are covered."   (ECF 110, Ex. 3.) But in his declaration, Hampton explained that this plan never took effect:

> While I indicated in that email exchange that BPA would likely be terminating Ms. Olson's contract, the final decision had not been made. Ultimately, BPA did not terminate the contact because – after consultation with a BPA attorney, and in an effort to ensure that BPA

---

[1] Notably, Olson was not copied on this email exchange, and there is no evidence that she ever received the email prior to the expiration of her contract in January 2015.

Page 3   FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF
            MOTION FOR SUMMARY JUDGMENT

met its legal obligations with respect to Ms. Olson – I determined that we did not have enough information to make the decision until Ms. Olson returned to work and we had a chance to discuss the working relationship with her.

(ECF 96, ¶ 10.)

The fact that BPA considered terminating Olson's contract before ultimately deciding not to do so does not create a dispute about whether BPA did in fact terminate the contract   The material issue with respect to Olson's claims is what actions BPA actually took, not what actions it considered taking.   On that point, the record is clear.   Hampton's testimony regarding BPA's ultimate decision is corroborated by Hampton's statements *to Olson* that she could continue working if and when she was willing and able to return to work.   (ECF 96 ¶¶ 13-18, Exs. 12, 13, 15.)

Olson's argument fares no better based on the second email that she cites – an April 30, 2014 email she received from Tamara Wilde, an employee in the SLMO office, informing her that her contract had been terminated.   (ECF 110, Ex. 4.) Olson completely ignores the substantial evidence that the email was simply an administrative mistake that BPA swiftly corrected.   Only one minute after she mistakenly sent the email, Wilde recalled it.   (ECF 96, Ex. 10.)   Minutes later, she sent the corrected email, which informed Olson that her access to BPA property was suspended due to her extended absence from the office but that access could be restored upon her return to work.   (ECF 96, Ex. 11.)   It is undisputed that Olson received this corrected email because she responded to it by informing Wilde that her attorney "will be contacting the agency about this situation."   (ECF 96, Ex. 11.)

Page 4    FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF
            MOTION FOR SUMMARY JUDGMENT

Most importantly, Hampton explicitly informed Olson the next day that the first email from Wilde was a mistake and that "BPA has a contract with MBO for your services, and that we are anticipating your return." (ECF 96, Ex. 12.)

Moreover, the actions of both Olson and BPA after April 30th demonstrate that both parties still considered the contract to be in effect. For example, Olson billed BPA for a half hour of work she performed remotely on May 14th, and BPA paid her for that work. (ECF 96, ¶¶ 20, 21, Ex. 13.) Likewise, Hampton and Olson met on June 5, 2014, to facilitate Olson's return to work, and Hampton granted Olson's request for a five hour trial period of work to see if she was capable of working. (ECF 96, ¶ 18, Ex. 15.)

The one case cited by Olson, *Schultz v. Wells Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1053-54 (D. Or. 2013), is distinguishable because in *Schultz* it was undisputed that the plaintiff had been terminated. The only question was whether the plaintiff's FMLA leave was a factor in her termination. Here, the undisputed evidence demonstrates that Olson's contract with BPA continued to be in force throughout her absence from work and that Olson simply never returned to work.

### B.    BPA Did Not Willfully Violate Olson's FMLA Rights

Olson's response to BPA's motion demonstrates a misunderstanding of BPA's statute of limitations argument. BPA does not claim that "Ms. Olson's complaint was untimely because Ms. Olson's claim was not a willful violation of her FMLA rights." (ECF 109 at p. 5.) Rather, BPA's argument is that Olson bears the burden of showing that any violation of her FMLA rights was willful because she cannot meet the two year statute of limitations for non-willful violations of FMLA

Page 5    FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF
           MOTION FOR SUMMARY JUDGMENT

rights.

Based on the undisputed facts, BPA did not violate Olson's FMLA rights. Nonetheless, even if Olson could show any incidental violation of her rights, Olson's claims still fail at summary judgment because she has not met her burden to show that any incidental violation was willful.

### C. Olson Was An Independent Contractor, Not A BPA Employee.

Summary judgment is appropriate because BPA did not terminate Olson's contract and thus did not violate any rights that Olson may have had under the FMLA. Nevertheless, summary judgment is also appropriate because Olson was not a BPA employee and, thus, BPA is not subject to liability under the FMLA. Olson makes several arguments in opposition, none of which create a material dispute of fact on this issue.

First, Olson points out that BPA changed the contracting relationship in 2012 specifically because it "recognized that Ms. Olson might be deemed an employee of BPA." (ECF 109 at p. 3.) But BPA's concern that Olson could be considered an employee for tax purposes is not an admission that Olson was in fact an employee (for tax purposes or any other purpose).

Second, Olson notes that she worked from BPA's offices occasionally, that BPA employees also teleworked, that she was suppled a BPA computer, and that her work was later performed by a federal employee after her contract ended. (ECF 110, ¶¶ 4-7.) These points are all correct but fail to address the most important fact, which is that BPA did not control the manner in which Olson performed her work. While Olson generally declares that she "was under the

**Page 6   FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF
             MOTION FOR SUMMARY JUDGMENT**

direction of Sharon Hale-Mockley", Olson does not dispute that individual employees or managers who needed assistance with reasonable accommodation issues would contact her directly, and she would schedule time to work with those "clients." (ECF 95 ¶ 5.) It is this critical lack of control over the means of Olson's work that demonstrates that she was not a BPA employee.

Olson also notes that federal regulations specifically contemplate the possibility that two companies can be joint employers of a worker. But these regulations are beside the point because BPA is not contending that Olson was solely an employee of MBO. Rather, BPA is contending that Olson was an independent contractor. The FMLA joint employer regulations do not displace the economic realities test for purposes of determining employment status under the FMLA.

Finally, Olson notes that an Administrative Judge ("AJ") for the Equal Employment Opportunity Commission found that Olson was a BPA employee in connection with Olson's administrative complaint of discrimination against BPA. This is correct, but the AJ's findings are not dispositive on the issue, nor are they entitled to any deference in this Court. The AJ's findings were limited to the matter at hand: "For the reasons given above, I find Olson should be considered an agency employee for purposes of processing her employment discrimination complaints." (ECF 110, Ex. 2 at p. 5.) With all due respect to the AJ, BPA contends that the AJ's decision was incorrect because it overlooked the key factor of the control over the manner in which Olson performed her work.

Page 7    FEDERAL DEFENDANT'S REPLY BRIEF IN SUPPORT OF
            MOTION FOR SUMMARY JUDGMENT

## III.   CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court grant Federal Defendants' motion for summary judgment and dismiss Olson's Amended Complaint with prejudice.

Dated this 26th day of February 2018.

                Respectfully Submitted,

                BILLY J. WILLIAMS
                United States Attorney
                District of Oregon

                */s/ James E. Cox, Jr.*
                JAMES E. COX, JR.
                Assistant United States Attorney
                    Attorneys for Federal Defendants