**David H. Griggs, OSB No. 982436**
e-mail: david@griggslawpc.com
GRIGGS LAW GROUP P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Telephone:  (971) 228-8110
Fax:  (971) 327-6735

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **ANDREA OLSON**, an individual | ) | Case No.: 3:15-cv-02216-HZ |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S TRIAL MEMORANDUM** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA**, by | ) | |
| and through the Department of Energy | ) | |
| and Bonneville Power Administration; | ) | |
| and **JAMES RICHARD PERRY**, | ) | |
| Secretary of the Department of Energy, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Andrea Olson brings this case against Defendants United States of America, by

and through the Department of Energy and Bonneville Power Administration, and James Richard

Perry, Secretary of the Department of Energy. Plaintiff brings three separate claims under the

Family and Medical Leave Act of 1993: (1) interference under 29 U.S.C. § 2615(a)(1); (2)

retaliation under 29 U.S.C. § 2615(b); and (3) retaliation under 29 U.S.C. § 2615(a)(2).

1 – TRIAL MEMORANDUM

## FACTUAL BACKGROUND

Defendant Bonneville Power Administration ("BPA") is a self-funded nonprofit federal power marketing administration that is part of the U.S. Department of Energy. In early 2010, Defendants entered into a contract with Plaintiff, through her company Pacific Disability Management, to provide reasonable accommodation services to its workforce. Defendants' initial contract with Plaintiff was for one year with four unilateral annual renewal options for BPA to extend the contract between 2011 and 2014. Under the terms of this contract, Plaintiff served as the reasonable accommodation coordinator ["RAC"] for Defendants in 2010 and 2011.

In 2011, Defendants declined to exercise their second option year and instead, for tax purposes, required Plaintiff to work for BPA through a Master Services Agreement ["MSA"] that BPA had with MBO Partners, a payroll service provider for certain BPA independent Contractors. Plaintiff accordingly entered into a General Service Agreement ["GSA"] with MBO Partners on January 10, 2012 and performed work for Defendants under the provisions of the MSA and GSA. Sharon Hale-Mockley is the manager who oversaw the reasonable accommodation program at the time Plaintiff worked for Defendants.

On March 3, 2014, Plaintiff contacted MBO to formally request reasonable accommodation as she knew that reasonable accommodation requests could not go directly to BPA per BPA policies. Plaintiff requested that Ms. Jackie Shelpman, BPA Ombudsman facilitate the following accommodations at BPA: "(1) Telework to reduce time onsite except for meetings and tasks that needed to be performed onsite; (2) Decisions that need to be made by the BPA Reasonable Accommodation Program Manager, Sharon Hale-Mockley, to be provided via email (in reply to decision request) within a specified time frame (deemed 'reasonable' by the BPA Reasonable Accommodation Program Manager; and (3) Open communication with the

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

DOE reasonable accommodation coordinator for guidance and best practices." Plaintiff requested Ms. Shelpman's assistance in facilitating the changes because she had been working within a hostile environment involving the Medical Program Manager, and facing retaliation from Ms. Hale-Mockley for filing an ethics complaint against the Medical Program Manager in December, 2013. MBO notified Defendants, through BPA's Supplemental Labor Management Office ("SLMO"), of these requests on Thursday March 13, 2014.

On March 17, 2014. Plaintiff notified Ms. Hale-Mockley that she would not be working through March 21. On March 21, Plaintiff again informed Ms. Hale-Mockley that she would not be at work the following week. On March 25, Plaintiff invoked FMLA with MBO and informed Ms. Hale-Mockley that her recent absences were for a medical reason. During this period, Plaintiff referred BPA employees with reasonable accommodation requests or issues to Hale-Mockley because she was still responsible for coordinating reasonable accommodation for BPA employees. Plaintiff first notified BPA management that she suffered from anxiety in February of 2014.

Ms. Hale-Mockley scheduled a meeting with Plaintiff for April 1, but Plaintiff was out of the office on FMLA per BPA policies and procedures for contract workers.

On April 4, Ms. Hale-Mockley met with Brian Carter, the director of HR, to discuss the reasonable accommodation program. Ms. Hale- Mockley requested that an existing federal employee, Susan Riffel, be assigned the RAC position. Mr. Carter agreed that Ms. Riffel should take over the position. Upon return from her absence, Mr. Carter and Ms. Hale-Mockley decided that Plaintiff would transition Ms. Riffle into the RAC role. Ms. Riffel was formally assigned the RAC position on April 14, 2014, approximately three weeks after Plaintiff invoked FMLA.

3 – TRIAL MEMORANDUM

On March 25, Plaintiff sent a Department of Labor Form to MBO certifying that she had a serious medical condition for the purposes of FMLA. At some point during Plaintiff's absence both Ms. Hale-Mockley and Mr. Hampton learned about Plaintiff's request for FMLA. In an email to MBO, Mr. Hampton informed MBO that Defendants would likely be terminating BPA's contract for Plaintiff's assignment.

On April 27, Plaintiff submitted an invoice to BPA for 2.1 hours of work performed at home that day because she was confused by her status being out on FMLA and no one appeared to be keeping up with accommodating BPA employees in her absence.

On April 29, Plaintiff contacted a BPA EEO counselor indicating that she was interested in filing a complaint of discrimination. That same day, Plaintiff ran into a BPA contract worker who asked how she was doing because he had received orders to pick up her BPA equipment because she had been terminated. The next day, Plaintiff received two emails from SLMO. The first email indicated that Plaintiff was terminated. The SLMO employee who sent the email subsequently recalled it and sent another email informing Plaintiff that her "access to the BPA network and property is being revoked as per security regulations that require revocation of access for anyone away longer than a month." Mr. Hampton also sent an email to Plaintiff confirming that the initial email terminating her employment had been sent in error and that her access was only being suspended because she had been absent for over a month. Since Plaintiff had worked at BPA for over four years, she was unaware of any BPA policy regarding absences of more than a month.

At the end of May, Plaintiff submitted a time sheet to Mr. Hampton for a half hour of work she had performed because a BPA reasonable accommodation employee called her at home with an issue. At that time, Plaintiff requested network access to attempt to telework and

4 – TRIAL MEMORANDUM

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

indicated that she has "been able to perform some work." Mr. Hampton required that Plaintiff

meet with him at BPA before working to discuss her accommodations. Plaintiff asked Mr.

Hampton whether she was correct in her understanding that Defendants had filled the RAC

position with another employee and that they wanted her onsite to train the new RAC. Mr.

Hampton confirmed that Defendants wanted Plaintiff only to transition the RAC position to a

federal employee and that they desired transition time with that worker. Plaintiff, continuing to

be confused by her identity, and fearing the loss of her only source of income while out on

FMLA then agreed to meet with Mr. Hampton and requested that an EEO counselor be present at

their meeting.

On June 5, Mr. Hampton met with Plaintiff at EEO counselor's office to discuss her

return to work and the three requests she had made on March 3. Despite knowing of those

requests since March 3, Mr. Hampton reviewed the requests as if it were the first time.

Plaintiff's medical condition was exacerbated as a result of Mr. Hampton behaviors not

appearing to know anything.  Plaintiff's experience left her feeling as if she were being retaliated

against.

On June 11, 2014, Mr. Hampton followed up with Plaintiff and confirmed that they had

agreed to most of Plaintiff's accommodation requests from earlier that year, including her desire

to telework. He also indicated that Defendants wanted Plaintiff to return to the BPA worksite to

assist with creating Reasonable Accommodation resources for the BPA employee who had

already been appointed to Reasonable Accommodation Coordinator position and that Ms. Hale-

Mockley would direct her work.  As Plaintiff had left the hostile work environment on March 17

because of retaliation by Ms. Hale-Mockley, the work conditions BPA imposed on Plaintiff were

indicative that she would continue to face retaliation if she returned to the worksite. After this

5 – TRIAL MEMORANDUM

time, Plaintiff did not perform any work for Defendants, and Defendants did not issue an

additional work order for Plaintiff.

### PLAINTIFF'S CLAIMS UNDER THE FMLA

The FMLA "creates two interrelated substantive rights for employees." *Xin Liu v. Amway

Corp.,* 347 F.3d 1125, 1132 (9th Cir. 2003). "First, an employee has the right to take up to

twelve weeks of leave" for the reasons described in the statute. Id. Second, an employee who

takes such leave "has the right to be restored to his or her original position or to a position

equivalent in benefits, pay, and conditions of employment upon return from leave." Id. (internal

citations omitted).

It is unlawful for an employer to "interfere with, restrain, or deny the exercise or the

attempt to exercise, any right provided" by the FMLA. *Bachelder v. Am. W. Airlines, Inc.*, 259

F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. § 2615(a)(1)). The Ninth Circuit has

recognized two theories for recovery under 29 U.S.C. § 2615, "the retaliation or discrimination

theory and the entitlement or interference theory." *Sanders v. City of Newport*, 657 F.3d 772, 777

(9th Cir. 2011) (*quoting Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th

Cir. 2002)). "While the FMLA does not clearly delineate these two claims with the labels

'interference' and 'retaliation,' those are the labels courts have used in describing an employee's

claims under the Act." Id. (*quoting Strickland v. Water Works & Sewer Bd. of Birmingham*, 239

F.3d 1199, 1206 n. 9 (11th Cir. 2001)).

In three separate counts, Plaintiff alleges that Defendants both interfered with her rights

under the FMLA and retaliated against her for opposing Defendants' unlawful FMLA practices.

Plaintiff's first count is for interference under § 2615(a)(1) of the Act, which provides that "it

shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

to exercise any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); *see Bachelder*, 259 F.3d at 1124 (noting that an allegation a plaintiff has been retaliated against for exercising his or her FMLA rights is properly construed as an interference claim under § 2615(a)(1)).

"[E]vidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). The Ninth Circuit has held that where the employer fails to reinstate the employee, "the employee must establish that (1) he was eligible for FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Id. (internal citations and quotations omitted). The McDonnell Douglas burden shifting analysis does not apply to FMLA interference claims, so a plaintiff "can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Bachalder*, 259 F.3d at 1125.

Plaintiff's second and third claims are both considered FMLA "retaliation" or "discrimination" claims. *Bachelder*, 259 F.3d at 1124. Section 2615(b) makes it "unlawful for any person to discharge or in any other manner discriminate against any individual because such individual has" participated in FMLA enforcement proceedings. 29 U.S.C. § 2615(b). Section 2615(a)(2) more broadly makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. *Id.* at § 2615(a)(2). For both claims, the plaintiff has to show "(1) involvement in a protected activity under the FMLA; (2) an adverse employment action; and (3) a causal link between the protected activity and the employment action." *Schultz v. Wells Fargo Bank, Nat'l*

7 – TRIAL MEMORANDUM

*Ass'n*, 970 F. Supp.2d 1039, 1059 (D. Or. Sept. 5. 2013). An adverse action in the context of retaliation clams is "any action that is 'reasonably likely to deter employees from engaging in protected activity.'" *deBarros v. Wal-Mart Stores*, No. 6:11-cv-06116-AA, 2013 WL 3199670, at *6 (D.Or. June 19, 2013) (*quoting Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000)). In this circuit, courts apply "the McDonnell Douglas burden shifting framework when analyzing FMLA retaliation claims." *Schultz*, 970 F.Supp.2d at 1058; *see also deBarros*, 2013 WL 3199670, at * 4 (applying the McDonnell Douglas burden shifting framework to claims brought under both §§ 2615(a)(2) and (b)).

First, Defendants failed to notify Plaintiff of her rights as required under the FMLA. ("Defendants failed to provide Plaintiff notice of her leave rights and entitlement, as required by 29 CFR § 825.300(d)–(e). . . ."). Such a failure may be properly construed as interference with Plaintiff's FMLA rights under § 2615(a)(1). *See Liston v. Nevada ex. rel its Dep't of Bus. & Industry,* 311 Fed. Appx. 1000, 1002 (9th Cir. 2009) ("The failure to notify an employee of her rights under the FMLA can constitute interference if it affects the employee's rights under the FLMA.").

Second, Defendants denied Plaintiff reinstatement by failing to restore her to employment at the conclusion of her leave. Defendants failed to reinstate Plaintiff to an equivalent position at the end of her leave in violation of the FMLA. "[T]he FMLA requires that an employer reinstate an employee after taking [protected] leave, so long as the employee would still be employed in the position had she not taken FMLA leave." *Sanders*, 657 F.3d at 780–81. The regulations provide: On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits,

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

pay, and other terms and conditions of employment. An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence. 29 C.F.R. § 825.214. "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, prerequisites, and status" and "involve[s] the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id*. at § 825.215(a). In order to "deny restoration to employment," "an employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested." *Id*. at § 825.216(a). Where an employee is hired for a specific term or project, the employer's obligation to restore the employee only extends through the term or project for which they were hired if the employer "would not otherwise have continued to employ the employee." *Id*. at (a)(3).

Defendants did not restore Plaintiff to her position. Plaintiff's duties upon return would primarily focus on training her replacement rather than performing her prior duties as RAC. Plaintiff's assignment during the period in question and through January 1, 2015, involved the duties ascribed to the RAC position. Plaintiff was entitled to the RAC assignment or a job with equivalent duties.

Defendants effectively denied her attempts to return to work by telling her not to work remotely and cutting of her access to Defendants' network. In addition, when Plaintiff was discussing her desire to return and attempt to work with Defendants she received confirmation of their decision to fill the RAC position with a federal employee who she would be tasked with training upon her return. Plaintiff did not return to complete a trial work period in a position that was different from the RAC position she had previously, which failure on Defendant's part

9 – TRIAL MEMORANDUM

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton OR 97005

violated the FMLA. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 767 (5th Cir. 2001) *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n,* 811 F.3d 702 (5th Cir. 2016).

In sum, transitioning Plaintiff from serving as the RAC to training her replacement months prior to the end of her contract term constitutes a change in job duties in violation of the FMLA. *See Wellington v. Lane Cty.,* 460 Fed.Appx. 690, 692 (9th Cir. 2011) (determining there was a genuine issue of material fact as to whether the plaintiff returned to an equivalent position where the plaintiff "retained the same pay, benefits, and job title" but the defendant "reassigned him to a different work location, eliminated his supervisory authority, and modified his managerial responsibilities").

## Defendants willfully interfered with Plaintiff's FMLA rights

"[N]either the Supreme Court nor the Ninth Circuit Court of Appeals has defined willfulness under the FMLA," but "other circuits have looked to the Supreme Court's definition of 'willful' in the context of the Fair Labor Standards Act." *Shulman v. Amazon.com, Inc.,* No C13-247RSM, 2013 WL 2403256, at *2 (W.D. Wash., May 30, 2013). "Under the FLSA, an employer acts 'willfully' when he or she 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Schultz,* 970 F.Supp.2d at 1053 (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)); *see also Hollowell v. Kaiser Found. Health Plan of the NW*, 705 Fed. Appx. 501, 503 (9th Cir. 2017) (applying McLaughlin's willfulness standard to an FMLA claim).

In *Schultz*, the district court found that "the evidence precludes a finding as a matter of law that [the defendant's] violation was not willful." *Schultz*, 970 F.Supp.2d at 1054. There, the evidence showed that everyone involved in the alleged adverse employment actions "knew she

10 – TRIAL MEMORANDUM

had taken protected leave," the "demotion and transfer occurred within days of her return from her third protected leave," and "her termination occurred just over seven months from her return from that protected leave." *Id.* at 1053–54. The plaintiff was subject to invasive questions regarding her medical conditions and need for future leave as well as critical performance reviews around the time she took protected leave. *Id.* at 1054.

Here, Plaintiff had notified Defendants that she was taking leave for medical reasons prior to the transfer of the RAC position. Generally, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA." *Bachelder*, 259 F.3d at 1130 (citing 29 C.F.R. § 825.302(c)). "Employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply." *Id.* "The employer should inquire further . . . if it is necessary to have more information about whether FMLA leave is being sought by the employee." *Id.*

Plaintiff indicated in a March 24, 2014 email to Ms. Hale-Mockley that she was taking leave for medical reasons. Concerned about the length of her absence, Ms. Hale-Mockley emailed Mr. Hampton that same day and informed him that Plaintiff was on leave with no definite return date and that it was related to a medical issue. In other words, the managers involved in the decision making had knowledge that Plaintiff was on leave for medical reasons.

Moreover, Plaintiff's medical leave resulted in Defendants' decision to transfer the RAC position to a federal employee in April instead of at the end of Plaintiff's contract. In the same email chain where Ms. Hale-Mockley informed Mr. Hampton of the medical reason for Plaintiff's leave, they determined that they should consider "releasing her from BPA" to "find a new person to do the job." When Plaintiff had been on leave for five weeks in early April, Ms. Hale-Mockley contacted Mr. Carter and they decided to transfer the position to a federal

11 – TRIAL MEMORANDUM

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

employee. The position was formally assigned to another employee on April 14, 2014 as a direct result of Plaintiff's taking medical leave.

## CONCLUSION

The evidence will show that Defendant BPA willfully violated Plaintiff's rights under the FMLA by failing to inform Plaintiff of her rights under the FMLA, failing to restore her to her position or an equivalent position upon her return from FMLA and terminating her employment.

DATED this 15th day of June, 2018.


GRIGGS LAW GROUP, P.C.

By:    /s/David H. Griggs
       David H. Griggs, OSB No. 982436
       e-mail: david@griggslawpc.com
       4900 SW Griffith Dr., Ste. 165
       Beaverton, OR 97005
       Telephone:  (971) 228-8110
       Fax:  (971) 327-6735
       Trial Attorney:  David H. Griggs

12 – TRIAL MEMORANDUM