**Dallas S. DeLuca, OSB #072992**
DallasDeLuca@MarkowitzHerbold.com
**Kristin M. Malone, OSB #151254**
KristinMalone@MarkowitzHerbold.com
**Katherine M. Acosta, OSB #165223**
KatherineAcosta@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax: (503) 323-9105

    Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANDREA OLSON**,<br><br>                    Plaintiff,<br><br>        v.<br><br>**UNITED STATES OF AMERICA,** by and through the Department of Energy and Bonneville Power Administration; and **JAMES RICHARD PERRY,** Secretary of the Department of Energy,<br><br>                    Defendants. | Case No. 3:15-cv-02216-HZ<br><br>**PLAINTIFF'S REBUTTAL WITNESS STATEMENT** |

    Plaintiff Andrea Olson ("Olson") hereby submits her lay witness rebuttal statements pursuant to the Court's Trial Management Order, ECF 117 and Scheduling Order, ECF 141.

    1.    Andrea Olson

    Olson will testify, contrary to Sharon Hale-Mockley's proposed testimony, that Olson did tell Hale-Mockley in February 2014 that she would invoke FMLA both directly, using the term "FMLA," and also without using the term FMLA. (Dkt. # 131, Defs.' Lay Witness List & Statements ("Defs.' Statements") at 3.)  Olson will testify that she also informed BPA indirectly in February 2014 when she informed Megan Craft of MBO that she intended to invoke FMLA.

**Page 1 -   PLAINTIFF'S REBUTTAL WITNESS STATEMENT**

Hale-Mockley will testify that she did not consider Olson a BPA employee, but an independent contractor and that Olson's work was "independent" and that she was an "indirect contractor" starting in 2012. (Defs.' Statements at 2.) Olson will testify that BPA required her to discontinue her status as an independent contractor in 2012 because BPA was concerned, beginning in at least late 2011, that she could be classified as a BPA employee, and therefore BPA required her to become an employee of MBO. BPA required Olson go through MBO in order to continue working at the agency or else BPA would terminate its relationship with Olson. Olson will testify that the nature of her work did not change with that change in status to working through MBO; she continued to work in the same manner that had originally caused BPA concern that she would be classified as an employee. Further, her work was not "independent," because it required review and approval from Hale-Mockley.

Hale-Mockley will testify as to her interactions with Olson, the nature of their relationship, and the nature of the work that Olson performed. (*Id.* at 2.) Olson will testify that their relationship and interactions changed over the course of 2010 to 2014, from a cooperative relationship with quick response times and where Hale-Mockley provided mentorship, to a difficult relationship where Hale-Mockley did not respond within appropriate timelines and created situations that made it difficult for Olson to make sure that BPA complied with its policies and laws concerning reasonable accommodations.

Hale-Mockley will testify as to Olson's leave and the communications related to it. (*Id.* at 3.) Olson will testify that during her leave Olson continued to work on some issues that she was able to handle. Olson will testify that she was not offered a "coordinator position" and that, to the contrary, the purpose for her to return to work was to train Susan Riffel who had already replaced Olson. Hale-Mockley had, by email, already given Olson's program coordinator role to Susan Riffel on April 14, 2014.

Hale-Mockley will testify that she encouraged Olson to come into work to transition back to work. Olson will testify that Hale-Mockley's statements and actions discouraged her from returning to work.

Scott Hampton will testify concerning the June 5, 2014 meeting, and Hampton will testify that Olson indicated that she was not sure if she could return to work at that time or at her original number of hours. (Defs.' Statements at 5.) Olson will testify that at that meeting she explained that she did believe she could ultimately return to work and that she hoped to work more hours. She will also testify that during that meeting Hampton made it clear that she would be training her replacement, a process that could be accomplished well before the end of her contract in January 2015. She will also testify that she attended only because she was afraid that if she did not attend the meeting, Olson would be deemed uncooperative and risk losing her job, even though Olson believed that she was not actually required to attend a face-to-face meeting.

Brian Carter will testify that he decided in January or February 2014 that Olson's position would be better filled by a federal employee. (*Id.* at 7.) Olson will testify that she met with Carter in February 2014 and did not discuss this topic. He did not indicate BPA intentions of having anyone else be the reasonable accommodations Coordinator except Olson. Based on her conversation with Carter, Olson believed Carter wanted Olson in his department more than he wanted Hale-Mockley.

DATED this 29th day of August, 2018.

                          MARKOWITZ HERBOLD PC

                    By:  */s/ Dallas DeLuca*
                          Dallas S. DeLuca, OSB #072002
                          DallasDeLuca@MarkowitzHerbold.com
                          Kristin M. Malone, OSB #151254
                          KristinMalone@MarkowitzHerbold.com
                          Katherine M. Acosta, OSB #165223
                          KatherineAcosta@MarkowitzHerbold.com

                          Of Attorneys for Plaintiff

778268